IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CT-03183-M

| | |
|---|---|
| ROBBIE SHERRON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    ORDER |
| | ) |
| TODD ISHEE, et al., | ) |
| | ) |
| Defendants. | ) |

On May 27, 2020, Robbie Sherron ("plaintiff"), a state inmate proceeding *pro se* and without prepayment of fees, filed a complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 7]. On July 2, 2020, plaintiff moved for leave to amend his complaint. Mot. [D.E. 8]. The court granted the motion and informed plaintiff the amended complaint would be considered his complaint in its entirely and would be subject to initial review. Order [D.E. 11]. On January 11, 2021, plaintiff filed an amended complaint. Am. Compl. [D.E. 12]. The court now conducts its initial review.

Legal Standard:

When a prisoner seeks relief in a civil action from a governmental entity or officer, a court must dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a), (b)(1). A frivolous case "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Legally frivolous claims are "based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Factually frivolous claims lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of a pleading is flexible, and a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). A *pro se* plaintiff's pleading, however, must contain "more than labels and conclusions," see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008), and the court need not accept as true any legal conclusions or unwarranted factual inferences, see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Further, a plaintiff also "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

### Plaintiff's Amended Complaint:

Plaintiff names as defendants: North Carolina Department of Public Safety ("DPS") Secretary Erik E. Hooks ("Hooks"); DPS Director of Prisons Todd Ishee ("Ishee"); Nash C.I. Warden Drew Stanley ("Stanley"); an unknown Tabor C.I. Green Unit Manager ("John Doe 1"); Tabor C.I. Correctional Officer ("C.O.") Simmons ("Simmons"); an unknown intake C.O. at Tabor C.I. ("John Doe 2"); Nash C.I. "Warden assist Mr. Mays whom is the assist superintendent [sic]" ("Mays"); and Nash C.I. "assist . . . superintendent [sic]" Taleenha Lee ("Lee"). Am. Compl.

2

[D.E. 12] at 3–5. Plaintiff generally alleges First, Eighth, and Fourteenth Amendment violations at Nash C.I. in 2018, 2019, and 2020, and at Tabor C.I. in 2020 and 2021. Id. at 6.

Plaintiff specifically alleges: he was transferred to Tabor C.I. in close quarters with inmates that had tested positive for Covid-19; after three weeks in "Green Unit F-Pod," these inmates went to different units; "plaintiff still suffering from the harmful symptoms [sic]"; he "has not been provided access to health care and the inadequate medical care indifference to Covid-19 and other mandated serious medical needs such as follow [-up] treatment for requested treatment for colon cancer [sic]" and for his neck and lower back surgeries and chronic conditions; treatment delays are ongoing since 2019; grievances he filed were "unanswered or destroyed"; defendant Stanley "stated that medical trips have all been stopped" due to the DPS response to Covid-19; he was wrongly placed in segregation at Nash C.I. after stating he would file a grievance and, after reinvestigation, defendant "May was ask to fix the problem [sic]"; he sought protective custody; Nash C.I. staff continued to write him up in retaliation for his refusal to leave segregation; each defendant was verbally informed he is vulnerable to Covid-19; defendant Stanley demoted him to close custody; he was placed in segregation at Nash C.I. on June 10, 2020; on August 6, 2020, Ishee, Hooks, Stanley, Lee, and Mays came to his cell, he "verbally presented the problems presented medical documents disciplinary reports," and Ishee and Hooks "stated verbally on video they would fix the violations [sic]"; on September 14, 2020, he was placed in a close custody unit at Tabor C.I.; and, on December 8, 2020, Tabor C.I. defendants Simmons and John Doe 1 were abusive during a confrontation about a cart he requested to facilitate a cell transfer. Id. at 6–8.

As to whether he filed grievances concerning his claims, plaintiff indicates "yes," but writes: "some was rejected some destroyed never answer [sic]" and directs the court to review his

3

filings in a different action.  Id. at 8.  As to whether the grievance process was completed, plaintiff indicates "no," and writes: "plaintiff in seg and keep requesting for forms to file another grievance[.] Staff in seg refuses to pass plaintiff 4 forms [sic]."  Id.

> For relief, plaintiff seeks a preliminary injunction:

> to keep correctional officers at . . . Tabor C.I. from threatening to harm the plaintiff, and to keep defendants . . . from solely punishing the plaintiff for the filing of his § 1983 cases[,] and stop all shipping prisoners and mix prison inmates spreading Covid-19[.] To be provided the needed treatment for his major [surgeries] follow treatment that's been once prescribed and colon cancer treatment and treatment for Loupiss [sic][,] and to stop the retaliating against the plaintiff[,] and stop the campaigning of harassment with threats to hurt the plaintiff[,] and legal papers legal mail documents being intercepted [and] being denied without cause[,] proper health food and [a] reasonable amount [of] hygiene materials[,] and [to] provide the sanitation and personal hygiene[,] proper trash procedures[,] and basic cleaning products[,] sanitary toilet facilities[,] and to stop [denying] the plaintiff pens[,] paper[,] and forms [for filing grievances] etc. [sic].

Id.

## Discussion:

As an initial matter, several of plaintiff's claims plainly are unexhausted.  The Prison Litigation Reform Act ("PLRA") states, in relevant part, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 83–85 (2006).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002); see Booth v. Churner, 532 U.S. 731, 741 (2001) (noting that exhaustion is required "regardless of the relief offered through administrative procedures.").

4

"North Carolina prisoners can satisfy the [PLRA's] exhaustion requirement by completing all three of the steps of the inmate grievance process, which culminates in the rendering of a decision upon the prisoner's appeal by the North Carolina Inmate Grievance Resolution Board." Harris v. Midford, No. 1:10-CV-263-RJC, 2011 WL 1601446, at *2 (W.D.N.C. Apr. 27, 2011). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007); see Ross v. Blake, 136 S. Ct. 1850, 1856 (2016).

Failure to exhaust administrative remedies is an affirmative defense that a defendant generally must plead and prove. See Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005), abrogated on other grounds by Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Nevertheless, "[a] court may sua sponte dismiss" where plaintiff's failure to exhaust administrative remedies is apparent on the face of the filings. Custis, 851 F.3d at 361 (citation omitted).

Many of plaintiff's claims arose after he filed his complaint on May 27, 2020, including: the June 10, 2020, Nash C.I. segregation placement; the August 6, 2020, Nash C.I. meeting with defendants; transfer to Tabor C.I.; the September 14, 2020, Tabor C.I. close custody placement; and the December 8, 2020, confrontation with Tabor C.I. defendants about a cart. It is clear on the face of the amended complaint that plaintiff did not exhaust these claims before filing this action. Plaintiff may not avoid the PLRA's exhaustion requirement by exhausting administrative remedies after filing or by amending the complaint to show exhaustion while the action is pending. See, e.g., Johnson v. Jones, 340 F.3d 624, 627–28 (8th Cir. 2003) ("[P]ermitting exhaustion *pendente lite* undermines the objectives of section 1997e(a)"); Hayes v. Stanley, 204 F. App'x. 304, 304 n.1 (4th Cir. 2006) (per curiam) (unpublished) (finding failure to exhaust administrative remedies may not be cured by amending a complaint). Thus, the court dismisses these claims

5

without prejudice. See Jones, 549 U.S. at 211; Woodford, 548 U.S. at 85; Booth, 532 U.S. at 741; Custis, 851 F.3d at 361; see also Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004) (noting courts typically dismiss without prejudice if inmates file suit before exhausting administrative remedies).

Next, the court turns to plaintiff's claim that defendant Stanley wrongly demoted plaintiff to close custody at Nash C.I. Am. Compl. [D.E. 12] at 7. This claim fails because plaintiff lacks a constitutional right to a particular custody classification. See Meachum v. Fano, 427 U.S. 215, 225 (1976) (noting custody classification in a state prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts"); Adams, 40 F.3d at 75 ("Prisoners have no right under the Constitution to be held in either protective or minimum custody."); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (noting changes to "prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges . . . are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively"); O'Bar v. Pinion, 953 F.2d 74, 82–84 (4th Cir. 1991) ("[A]dministrative segregation and reclassification . . . are . . . discretionary administrative acts in which an inmate obtains no liberty interest under North Carolina law.").

Next, the court considers plaintiff's claim that Nash C.I. staff wrote him up in "retaliation" for refusing to leave segregation. Am. Compl. [D.E. 12] at 7. For a retaliation claim to survive initial review, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right," and also must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of a constitutional dimension. Adams, 40 F.3d at 74–75. Here, plaintiff's bare

6

assertion merely "labels" these write-ups as retaliation, see Twombly, 550 U.S. at 555, Giarratano, 521 F.3d at 304 n.5, and, as noted above, because he lacks a constitutional right to a particular custody classification, he also fails to state a cognizable retaliation claim, Adams, 40 F.3d at 75.

Next, plaintiff's bald allegation that his grievances were "unanswered or destroyed" is too threadbare to state a retaliation claim against defendants. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"); see also Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017) (explaining that, under Adams, 40 F.3d at 75, "inmates have no constitutional entitlement or due process interest in access to a grievance procedure."), cert. denied, 138 S. Ct. 755 (2018).

Next, the court turns to plaintiff's claim that he was wrongly placed in segregation after saying he would file a grievance. Am. Compl. [D.E. 12] at 7. To survive initial review on a First Amendment retaliation claim, plaintiff must plausibly "allege that (1) he engaged in protected First Amendment activity, (2) the defendant[s] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant[s'] conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quotation and alterations omitted), cert. denied, 138 S. Ct. 738 (2018); see Booker, 855 F.3d at 540, 544; Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005).

Here, plaintiff's bald contention fails to plausibly allege the required causal relationship between the purported First Amendment activity and adverse action, cf. Martin, 858 F.3d at 249, and, more generally, plaintiff again fails to provide specific supporting facts necessary to state a cognizable retaliation claim, see Adams, 40 F.3d at 75. Accordingly, this claim also fails.

7

To the extent plaintiff instead alleges this placement in segregation violated his Fourteenth Amendment due process rights, a prisoner is only entitled to procedural due process protections for a prison disciplinary proceeding that imposes a punishment that either alters "the duration of [an inmate's] sentence," or causes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 487 (1995). Plaintiff, however, fails to plausibly allege either an alteration to his sentence or an "atypical and significant hardship." Cf. id. at 484; see Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; Riccio v. Cty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) ("Alleged violations of due process in the deprivation of a protectable interest are to be measured against a federal standard of what process is due and that standard is not defined by state-created procedures, even when those state-created procedures exceed the amount of process otherwise guaranteed by the Constitution.").

Next, to the extent plaintiff alleges denial of access to courts, his bald allegations fail to identify with specificity an actual injury or "demonstrate that a nonfrivolous legal claim had been frustrated or impeded." Lewis v. Casey, 518 U.S. 343, 351–52 (1996); see Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006). Accordingly, this claim also fails.

Next, the court considers plaintiff's claims that: defendants were informed he is vulnerable to Covid-19; "all medical trips stopped" because of Covid-19 protocols; and he was denied offsite medical care that previously had been prescribed for colon cancer follow-ups, postoperative neck and back care, chronic conditions, and (presumably) lupus. See Am. Compl. [D.E. 12] at 7–8.

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 296–97 (1991) (internal citation omitted). "In order to make out a *prima facie* case that prison conditions violate the Eighth

8

Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The first prong requires that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (quotation and emphasis omitted). The second prong requires a prisoner to show that "the officials acted with a sufficiently culpable state of mind." Id. (quotation and emphasis omitted); see also Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.").

Deliberate indifference to a prisoner's serious medical needs violates the prisoner's Eighth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999); see also Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (noting a plaintiff "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." (quotation omitted)).

When a prisoner alleges denial or delay of medical care, the prisoner must prove that the prison official knew of and disregarded an objectively serious condition, known medical need, or substantial risk of serious harm. See Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016); Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (noting the subjective prong of a deliberate indifference claim requires proof of "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the official's] action or inaction."). Beyond

9

such actual knowledge, the official "must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate." Iko, 535 F.3d at 241 (quotation marks and citation omitted). A prisoner, however, is not entitled to choose his course of medical treatment, Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam), and disagreements over forms of treatment concern medical judgments, not the Eighth Amendment, see Scinto, 841 F.3d at 225. Mere negligence in diagnosis or treatment also does not state a constitutional claim. See Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Grayson, 195 F.3d at 695 ("Deliberate indifference is a very high standard–a showing of mere negligence will not meet it.").

Whether plaintiff requires outside "medical trips" for postoperative neck and back care, colon cancer follow-ups, or care for lupus and other chronic conditions involves questions of medical judgment, and his claims reflect mere disagreement with his course of treatment. See Scinto, 841 F.3d at 225; Russell, 528 F.2d at 319. These threadbare claims do not plausibly allege either 1) that defendants knew of, but disregarded, a substantial risk of serious harm to plaintiff due to the policy preventing "medical trips" or his Covid-19 vulnerability; or 2) that defendants acted with a sufficiently culpable state of mind required for a viable deliberate-indifference claim. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; Jackson, 775 F.3d at 178; De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (surviving initial review requires an inmate to plausibly allege both "(1) that the deprivation of a basic human need was objectively sufficiently serious, and (2) that subjectively the officials acted with a sufficiently culpable state of mind." (quotation and alterations omitted)); Iko, 535 F.3d at 241; De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (noting only "extreme deprivations" – *i.e.*, a "serious or significant physical or emotional

10

injury resulting from the challenged conditions" or a substantial risk thereof – satisfy the objective component of Eighth Amendment conditions-of-confinement claims); Strickler, 989 F.2d at 1379; see also Wilson v. Williams, 961 F.3d 829, 842–43 (6th Cir. 2020) (rejecting a contention that the Bureau of Prisons was deliberately indifferent to inmate health and safety because its protocols were ineffective at preventing the spread of Covid-19). Thus, these claims also fail.

The court now turns to plaintiff's request for a preliminary injunction. Courts issue injunctive relief involving the management of prisons only in extraordinary circumstances. Taylor v. Freeman, 34 F.3d 266, 268–269 (4th Cir. 1994). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); see U.S. Dep't of Labor v. Wolf Run Mining Co., 452 F.3d 275, 281 n.1 (4th Cir. 2006) (noting equivalent standards for granting a temporary restraining order ("TRO") and a preliminary injunction). The Supreme Court has rejected the "standard that allowed the plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009) (quotation omitted), vacated on other grounds, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam).

Here, plaintiff's request for a preliminary injunction fails because he does not establish a likelihood of success on the merits, extraordinary circumstances, and clear entitlement to the relief. Winter, 555 U.S. at 20; Real Truth, 575 F.3d at 346; Taylor, 34 F.3d at 268–269.

11

Next, the court considers plaintiff's self-styled "motion for summary judgment on the amended complaint and motion for order to show cause for an preliminary injunction a temporary restraining order [sic]." Mot. [D.E. 14]. Plaintiff expresses an intention to further amend the complaint to raise new claims about conflicts with non-defendant correctional officers, destruction of legal documents, and conditions of confinement issues at Tabor C.I. beginning in November 2020. Id. at 1–3. Plaintiff requests forms to file a second amended complaint and asks the court to mail him a copy of his prior amended complaint. Id. at 4. Plaintiff seeks relief from: prison overcrowding; "patterns and practice of guard brutality and physical emotional harassment"; "widespread deficiencies" jeopardizing health and safety; staff refusing to accept plaintiff's legal mail; inadequate dental treatment; and "the extremely actions by prison staff at Tabor C.I. the continuing of ongoing violations of plaintiff's rights [sic]." Plaintiff asks the court to: "enter judgment granting plaintiff right to amend pursuant to Rule 15(a) and 19(a) and pleading on summary judgment to amend and TRO injunction protective order [sic][.]"

The court construes this filing as a motion to amend and a proposed amended complaint. See United States v. Winestock, 340 F.3d 200, 203 (4th Cir. 2003) (noting courts "classify pro se pleadings from prisoners according to their contents, without regard to their captions."). A court should freely grant leave to amend a complaint unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (quotation omitted).

Because the claims in the instant motion stem from incidents at Tabor C.I. occurring well after plaintiff initiated this action, he plainly has not satisfied the PLRA's exhaustion requirement for these claims. See Jones, 549 U.S. at 211; Woodford, 548 U.S. at 85; Booth, 532 U.S. at 741;

12

Custis, 851 F.3d at 361; see also Johnson, 340 F.3d at 627–28; Hayes, 204 F. App'x. at 304 n.1.

Further, plaintiff's request for injunctive relief again fails to establish extraordinary circumstances, a likelihood of success on the merits, or more than the mere possibility of irreparable harm.  See Winter, 555 U.S. at 20; Real Truth, 575 F.3d at 346; Taylor, 34 F.3d at 268–269.  Accordingly, the court denies the motion as futile.  See Laber, 438 F.3d at 426–27; Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986) ("Leave to amend, however, should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face.").

Finally, although plaintiff seeks copies of his earlier filings, Mot. [D.E. 14] at 4, a *pro se* litigant is responsible for maintaining his own legal records.  Plaintiff is not entitled to copies at the Government's expense.  See United States v. Gallo, 849 F.2d 607, 1988 WL 60934, at *1 (4th Cir. May 31, 1988) (per curiam) (unpublished table decision).  Plaintiff instead may file a record system request through the Clerk's Office or utilize the Public Access to Court Electronic Records ("PACER") program.  See 28 U.S.C.A. § 1914, Judicial Conference Schedule of Fees, at ¶4; http://www.nced.uscourts.gov/pdfs/CopyRequestInstructions.pdf (last visited June 11, 2021).

### Conclusion:

In sum, the court: DENIES AS FUTILE the pending motion to amend [D.E. 14]; DENIES the requested injunctive relief; DISMISSES WITHOUT PREJUDICE plaintiff's unexhausted claims; DISMISSES plaintiff's remaining claims for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1); and DIRECTS the clerk to close the case.

SO ORDERED, this __14th__ day of June 2021.

RICHARD E. MYERS II
Chief United States District Judge